IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>ADAM AIRCRAFT INDUSTRIES, INC.<br><br>    Debtor.<br><br>———————————————————<br><br>JEFFREY A. WEINMAN, as Chapter 7 Trustee for the Bankruptcy Estate of Adam Aircraft<br><br>    Plaintiff,<br><br>v.<br><br>MORGAN STANLEY SENIOR FUNDING, INC., MORGAN STANLEY & CO., INC.<br><br>    Defendants. | Case No. 08-11751 MER<br><br>Chapter 7<br><br><br><br>Adversary No. 11-1156 MER<br><br><br><br><br><br><br><br><br>Signed/Docketed<br>February 28, 2012 |

**ORDER**

THIS MATTER comes before the Court on the *Motion to Dismiss Adversary Complaint* (the "Motion") filed by Defendants Morgan Stanley Senior Funding, Inc. and Morgan Stanley & Co., Inc. ("Morgan Stanley"), the *Response to Defendants' Motion to Dismiss Adversary Complaint* (the "Response") filed by Plaintiff Jeffrey A. Weinman, as Chapter 7 Trustee for the Bankruptcy Estate of Adam Aircraft (the "Trustee"), and *Defendants' Reply to Plaintiff's Response to Motion to Dismiss Adversary Complaint* (the "Reply") filed by Morgan Stanley.

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), (F), and (O) because it concerns the administration of the estate, the allowance or disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, proceedings to determine, avoid, or recover preferences, and the liquidation of assets of the estate.

**BACKGROUND FACTS**

Founded in 1998, Adam Aircraft Industries, Inc. (the "Debtor"), was a developer of small, lightweight, high-technology aircraft. In late 2006, the Debtor entered the investment market in search of funding for its operations. According to the Complaint, based on its near-term production and operation needs, the Debtor needed funding in an amount between a minimum of $90 million and $125 million, which amount would provide a reasonable contingency to allow for uncertainties associated with Federal Aviation Administration aircraft certification.[1]

On February 14, 2007, Morgan Stanley submitted a "Proposal Letter" responding to the Debtor's request to underwrite $125 million in financing.[2] The terms of the Proposal Letter were agreed to and accepted by the Debtor as of February 14, 2007. In the Proposal Letter, Morgan Stanley agreed to underwrite $120 million, subject to additional due diligence.[3] On March 21, 2007, Morgan Stanley sent a letter to the Debtor indicating, based on additional due diligence performed, it would modify the terms of the Proposal Letter.[4] The revisions included, among other things, a reduction in Morgan Stanley's financing commitment.

Thereafter, the Debtor, Morgan Stanley, and several other lenders executed a Senior Secured Credit Agreement (the "Credit Agreement") and corresponding loan documents (collectively, the "Loan Documents"), under which Morgan Stanley agreed to loan the Debtor $80 million (the "Loan").[5] Pursuant to the Loan Documents, the Debtor granted Morgan Stanley a security interest in virtually all of its personal property, including all aircraft and accounts. The Loan Documents provided Morgan Stanley could, in an event of default, set-off any deposits of the Debtor against its obligations to the Lenders. Moreover, the Debtor's principal operating account at JPMorgan Chase was specifically pledged as secured collateral for the Loan. The Loan Documents also included a Deposit Agreement, whereby the Debtor agreed Morgan Stanley could instruct Vectra Bank, the holder of another one or more of the Debtor's accounts, to

---

[1] Complaint, para 4.

[2] Motion, Exhibit A. The term "Proposal Letter" is a defined term in the letter dated February 14, 2007 and as such the Court will refer to the February 14, 2007 letter as the "Proposal Letter" for the purposes of this ruling; however, the Court makes no determination at this time concerning whether the letter should be construed as a "proposal" or "commitment" or, as suggested by the Debtor in paragraph 32 of the Complaint, an "Underwriting Agreement."

[3] Motion, Exhibit A, p.4.

[4] Motion, Exhibit B.

[5] Additional lenders included Ore Hill Fund, L.P., Permal Capital Structure Opportunities, Ltd., and Sandler Capital Structure Opportunitiers, Ltd. and, together with Morgan Stanley, are herein referred to as, the "Lenders."

cease honoring instructions from the Debtor and transfer funds to Morgan Stanley upon its (Morgan Stanley's) request.[6]

On October 10, 2007, the Lenders sent a letter to the Debtor alleging the Debtor breached certain terms of the Credit Agreement and, as a result, the Lenders were entitled to notice an event of default under that agreement.[7] On December 3, 2007, Morgan Stanley sent the Debtor a "Notice of Default" alleging the Debtor: 1) failed to file one or more aircraft supplements as required by a post-closing agreement; and 2) made statements in certain reports to the Lenders that were materially misleading or inaccurate.[8] Also on that date, Morgan Stanley sent a corresponding "Notice of Exclusive Control," as provided in the Loan Documents, advising the Debtor of Morgan Stanley's intention to take control of the Debtor's account with JPMorgan Chase.[9] Thereafter, Morgan Stanley exercised its rights under the Loan Documents and froze the Accounts.

Following the default correspondence, the Debtor and Morgan Stanley negotiated a series of forbearance agreements and extensions under which Morgan Stanley agreed to release some of the frozen funds. On December 21, 2007, the parties to the Credit Agreement executed an Amended and Restated Forbearance Agreement (the "Forbearance Agreement") in which the parties extended the forbearance period with continued agreement from the Lenders to refrain from enforcing their rights under the Loan Documents.[10] In exchange, the Debtor entered into a release of all claims against Morgan Stanley arising from the Credit Agreement or the conduct of the Lender.

On February 15, 2008 (the "Petition Date"), the Debtor filed its voluntary bankruptcy petition under Chapter 7 of Title 11, the United States Bankruptcy Code (the "Bankruptcy Code"). On March 9, 2011, the Trustee commenced this adversary proceeding by filing his *Adversary Complaint* against Morgan Stanley (the "Complaint"). The Complaint sets forth two causes of action: 1) for equitable subordination of the Debtor's debt owed to Morgan Stanley under 11 U.S.C. § 510;[11] and 2) for disallowance

---

[6] Complaint, ¶ 41. The JPMorgan Chase account and the Vectra account(s) are hereafter referred to collectively as, the "Accounts."

[7] Motion, Exhibit E.

[8] Motion, Exhibit F.

[9] *Id.*

[10] Motion, Exhibit I.

[11] Unless otherwise noted, all statutory references are to Chapter 7 of Title 11, the United States Code (the "Bankruptcy Code").

of Morgan Stanley's secured and unsecured claims under § 502(b)(1).[12] As grounds therefore, the Trustee alleges 1) a breach of the terms of the Proposal Letter, or, alternatively, breach of the covenant of good faith and fair dealing in exercising its discretion under the Proposal Letter; and 2) a breach of the terms of the Loan, or, alternatively, a breach of the covenant of good faith and fair dealing in Morgan Stanley's exercising its discretion under the Loan Documents.[13]

Specifically, with respect to the Proposal Letter, the Trustee alleges Morgan Stanley breached the terms of the Proposal Letter, notwithstanding the Debtor's performance of its obligations thereunder, by improperly "backing out" of that letter agreement without good reason. Additionally, the Trustee alleges Morgan Stanley's actions were inconsistent with the reasonable expectations of the parties arising from the Proposal Letter, inasmuch as the Debtor understood if it did not suffer any financially adverse changes, Morgan Stanley would not reverse its commitment under that letter agreement.

With respect to the Loan Documents, the Trustee alleges Morgan Stanley improperly froze the Accounts, notwithstanding the Debtor's performance of its obligations under the Loan Documents, thereby causing the Debtor to go out of business and suffer damages. Additionally, the Trustee alleges Morgan Stanley's actions were inconsistent with the reasonable expectations of the parties arising from the Loan Documents inasmuch as the Debtor understood if it consistently made its loan payments on time, met operational goals, and did not suffer material adverse changes in its financial condition, Morgan Stanley would not declare a "soft" default for any technical reasons and freeze the Accounts without providing the Debtor an opportunity to cure any such default.

On April 29, 2011, Morgan Stanley filed its Motion seeking dismissal of the Complaint, arguing: 1) the equitable subordination claim cannot plausibly allege egregious or illegal conduct; and 2) the Debtor released all claims against Morgan Stanley upon execution of the Forbearance Agreement. In addition, Morgan Stanley seeks an order striking any affirmative relief requested by the Trustee associated with his claim under § 502(b)(1). Specifically, Morgan Stanley argues the Trustee fails to state a claim for subordination or disallowance because he has not shown the type of egregious conduct leading to such claims, but rather has alleged mere breach of contract claims. Finally, Morgan Stanley asserts the Debtor released all claims against it related to the Loan or the conduct of the Lenders thereunder pursuant to the prepetition Forbearance Agreement and, therefore, the Trustee is subject to those releases.

---

[12] Complaint, pp. 15 -16.

[13] *Id.*

## DISCUSSION

A motion to dismiss under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of a complaint assuming all the factual allegations in the complaint are true.[14] In making this determination, a court must decide whether the complaint contains sufficient facts to state a claim for relief that is plausible on its face.[15] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[16] The complaint must contain "enough factual matter (taken as true)" to "raise [the] right to relief above the speculative level."[17] The court must still accept the facts alleged in the complaint as true, even if they are doubtful,[18] and it must make all reasonable inferences in favor of the plaintiff.[19]

The Tenth Circuit Court of Appeals has noted how the *Bell Atlantic* case changed the standard under FED. R. CIV. P. 12(b)(6):

> In *Bell Atlantic*, the Supreme Court stated that the old standard, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp.*, 127 S.Ct. at 1968-69. Although the Supreme Court was not clear on the articulation of the proper standard for a Rule 12(b)(6) dismissal, its opinion in *Bell Atlantic* and its subsequent opinion in *Erickson v. Pardus*, ___ U.S.___, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007), suggest that courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. *See Iqbal v. Hasty*, 490 F.3d 143 (2nd Cir. 2007) (considering *Bell Atlantic* and *Erickson* and concluding that a "plausibility" standard was what the Supreme Court intended).[20]

---

[14] *Mobley v. McCormick*, 40 F.3d. 337, 340 (10th Cir. 1994).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (requiring sufficient factual specificity in support of claims, which, if assumed to be true, demonstrate the plaintiff has "plausibly (not just speculatively) stated a claim for relief.").

[16] *Bell Atlantic*, 550 U.S. at 555.

[17] *Bell Atlantic*, 550 U.S. at 555-56. *See also Official Committee of Unsecured Creditors v. Blomen, et al. (In re Hydrogen, LLC)*, 431 B.R. 337, 345 (Bankr. S.D.N.Y. 2010).

[18] *Bell Atlantic*, 550 U.S. at 555-556.

[19] *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

[20] *Alvarado*, 493 F.3d at 1215, n.2.

Within the context of FED. R. CIV. P. 12(b)(6), the Court next looks to FED. R. CIV. P. 8. Rule 8 sets forth the general rules for pleadings and "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"[21] With these standards in mind, the Court will evaluate the claims set forth in the Complaint.

### A.    Equitable Subordination

Section 510(c) of the Bankruptcy Code provides in relevant part:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may -

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; . . .[22]

The Tenth Circuit adopted the three-part test set forth in the leading case on equitable subordination, *In re Mobile Steel*,[23] permitting a court to exercise its equitable subordination power only upon a showing of: "(1) 'inequitable conduct' on the part of the claimant sought to be subordinated; (2) injury to the other creditors of the bankrupt or unfair advantage for the claimant resulting from the claimant's conduct; and (3) consistency with the provisions of the Bankruptcy Code."[24] In adopting the *Mobile Steel* standard in *Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.)*,[25] the Tenth Circuit placed special emphasis on the inequitable conduct prong, stating, "'The critical inquiry is whether there has been inequitable conduct on the part of the party whose debt is sought to be subordinated.'"[26] "Inequitable conduct" for subordination purposes encompasses three categories of misconduct: "'(1) fraud, illegality, and breach of

---

[21] *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

[22] 11 U.S.C. § 501(c)(1).

[23] 563 F.2d 692 (5th Cir. 1977).

[24] *In re Hedged-Investments Associates, Inc.*, 380 F.3d 1292, 1300-1301 (10th Cir. 2004) (citing *In re Mobile Steel*, 563 F.2d at 699-700).

[25] 990 F.2d 551, 559 (10th Cir. 1993).

[26] *Hedged Investments Associates*, 380 F.3d at 1300 (quoting *In re Castletons, Inc.*, 990 F.2d at 559).

fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego.'"[27]

Here, the Trustee's equitable subordination claim is preceded by allegations replete with references to the parties' negotiations, expectations, and conduct underlying the Proposal Letter and Loan Documents which necessarily cannot be dismissed out of hand without factual investigation. Indeed, as the Trustee notes in his Response, any claim for equitable subordination is necessarily based on conduct and conduct gives rise to a question of fact. As such, he asserts the one-hundred plus factual allegations in the Complaint, taken as true, defeat any argument the claim as asserted cannot stand.

For example, the Trustee alleges Morgan Stanley breached its agreement under the Letter Proposal by exercising its discretion in a way the parties did not intend and under circumstances where time was of the essence to the Debtor's survival.[28] The allegations underlying that exercise of discretion, taken as true, rise far above any speculative level prohibited by FED. R. CIV. P. 12(b)(6). In addition, Morgan Stanley's identification of an alleged "technical default" under the Loan Documents and freezing of the Debtor's Accounts are unquestionably fact specific.[29] Whether, as the Trustee asserts, such actions by Morgan Stanley were in breach of the Loan Documents, is not a matter to be determined at this stage in the proceeding. Read in a light most favorable to the Trustee, the Court concludes the Complaint sets forth sufficient, numerous allegations concerning Morgan Stanley's conduct in connection with the Loan Documents.

Furthermore, the Court is not persuaded by Morgan Stanley's argument the release in the Forbearance Agreement is enforceable against the Trustee. Rather, the Court finds persuasive the reasoning set forth in *Minnesota Corn Processors, Inc. v. American Sweeteners, Inc. (In re American Sweeteners, Inc.)*.[30] In that case, the court concluded a prepetition release by the debtor did not preclude third-party creditors from pursuing causes of action bestowed by the Bankruptcy Code and inuring to the benefit of unsecured creditors. As noted by that court, "the beneficiaries of equitable subordination are creditors with a lower distributive priority."[31] Morgan Stanley would have this Court conclude *American Sweetners* is distinguishable, arguing in this case

---

[27] *Id.* (quoting *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators)*, 926 F.2d 1458, 1467 (5th Cir. 1991)).

[28] Complaint, ¶ 14-35, 90-93.

[29] *Id.* ¶ 77-89.

[30] 248 B.R. 271 (Bankr. E.D. Pa. 2008).

[31] *Id.* at 277.

only the Trustee is barred from bringing an equitable subordination claim because he stands in the shoes of the Debtor. That interpretation is inaccurate. Here, the Trustee's actions do in fact arise from the Bankruptcy Code and inure to the benefit of all creditors. Indeed, it is the Trustee's mandate to exercise his judgment and pursue any and all interests and causes of action of the estate for the benefit of unsecured creditors. To suggest otherwise leads to an impractical result in direct contravention with the Trustee's duties under the Bankruptcy Code.

Moreover, the Trustee sets forth sufficient factual allegations in his Response to preclude dismissal of the equitable subordination claim under FED. R. CIV. P. 12(b)(6). Again, whether the allegations underlying that claim bear fruit is not appropriate for determination at this time. Accordingly, Morgan Stanley's reliance on the release in the Forbearance Agreement must fail and the Motion shall be denied as it relates to the Trustee's first cause of action.

### B. Disallowance of Claim

Based on the Court's conclusion concerning the Trustee's equitable subordination claim, the Court necessarily concludes the Trustee's claims under § 510 should not be dismissed at this time. Accordingly, the Motion shall be denied as it relates to the Trustee's second cause of action.

### CONCLUSION

Based on the foregoing, Morgan Stanley's *Motion to Dismiss Adversary Complaint* is hereby DENIED.

Dated February 28, 2012                         By the Court:

                                                Michael E. Romero
                                                United States Bankruptcy Judge